1 **MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. (SBN 90058)
2 Marcus J. Bradley, Esq. (SBN 174156)
William A. Baird, Esq. (SBN 192675)
3 29229 Canwood Street, Suite 208
Agoura Hills, California  91301
4 Telephone:  (818) 991-8080
Facsimile:  (818) 991-8081
5 ssaltzman@marlinsaltzman.com
mbradley@marlinsaltzman.com
6 tbaird@marlinsaltzman.com

7 Attorneys for Plaintiff

8                **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11 ERIN CALDERON, individually and       **CASE NO. CV13-7046 GHK (JEMx)**
12 on behalf of all others similarly
situated,                              **CLASS ACTION**
13
14                    Plaintiff,           **CLASS ACTION COMPLAINT FOR**
                                          1. **FALSE AND MISLEADING**
15 v.                                       **ADVERTISING IN**
                                           **VIOLATION OF BUSINESS**
16                                          **AND PROFESSIONS CODE**
CARGILL, INC.; and DOES 1 through        **§17200, *et seq.***
17 10, inclusive,                         2. **FALSE AND MISLEADING**
                                          **ADVERTISING IN**
18                    Defendants.          **VIOLATION OF BUSINESS**
19                                          **AND PROFESSIONS CODE**
                                           **§17500, *et seq.***
20                                        3. **VIOLATION OF CALIFORNIA**
21                                          **CIVIL CODE § 1750.  *et seq.***
                                          4. **UNJUST ENRICHMENT**
22                                        5. **BREACH OF EXPRESS**
                                           **WARRANTY**
23                                        6. **BREACH OF IMPLIED**
24                                          **WARRANTY**
                                          7. **VIOLATION OF CONSUMER**
25                                          **FRAUD LAWS**
26
27                                        **JURY TRIAL DEMANDED**
28
                                   -1-
                                          **Class Action Complaint**
                                          **Case No. _____**

Plaintiff Erin Calderon ("Plaintiff") alleges the following based upon personal knowledge as to herself and her own acts, and upon information and belief and the investigation by Plaintiff's counsel, which included, among other things, a review of public documents, marketing materials, and announcements made by Cargill, Inc. ("Defendant" or "Cargill") as to all other matters.  Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein and will be available after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.      This action seeks to remedy the unfair, deceptive, and unlawful business practices of Cargill with respect to the marketing, advertising, labeling, and sales of Truvía® Natural Sweetener (the "Product" or "Truvía® Natural Sweetener" or "Truvía").

2.      Agribusiness behemoth Cargill is in the business of creating innovative and reformulated food and beverage ***ingredients***.  For instance, Cargill's Sweetener Division develops and manufactures ingredients that provide "sweet taste that replaces the function of sucrose in food and beverages."[1]

3.      Cargill recognizes consumers are increasingly health conscious.[2]  To capitalize on this market trend, Cargill joined forces with The Coca-Cola Company ("Coca-Cola") to develop a purportedly natural, sweeter-than-sugar, non-caloric sweetening ingredient for food and beverages.  Cargill and Coca-Cola publicly revealed the results of this ultra-secret endeavor in 2008 – an extract of the leaf of the stevia plant, high purity *Rebaudioside A* ("Reb A").  Cargill uses Reb A as an ingredient in its tabletop sweetener product, branded as Truvía® Natural Sweetener, touting it as the first ***natural*** sugar substitute, developed "[i]n

---

[1] *See* http://www.cargillfoods.com/na/en/products/sweeteners/specialty-sweeteners/index.jsp  (last visited June 7, 2013).

**Class Action Complaint**
**Case No. _____**

response to strong consumer demand for a natural, zero-calorie way to sweeten foods and beverages . . . ."[3]

4.      Since as early as 2008 ("Class Period"), Cargill has manufactured, distributed, and sold Truvía and consistently has marketed, advertised, and labeled Truvía as a natural sweetener primarily made from the stevia plant.

5.      As part of a scheme to make Truvía more attractive to consumers, boost its sales, and ultimately increase its profits, Cargill uses terms such as "Nature's Calorie-Free Sweetener" and "Truvía® sweetener comes from nature," and natural imagery such as the leaves of the stevia plant in labeling, advertising, and marketing materials. (See e.g. examples below)




---

[2] *See* Cargill 2012 Annual Report at 10-11 available at http://www.cargill.com/wcm/groups/public/@ccom/documents/document/na3065 958.pdf, at 10-11 (last visited June 7, 2013).
[3] *See* http://www.cargill.com/news/releases/2008/NA3007625.jsp (last visited June 7, 2013).

**Class Action Complaint**
**Case No. _____**

6.      The use of these terms and natural imagery is designed to, and does, induce consumers, such as Plaintiff and the members of the putative classes, into believing that Truvía is a natural sweetener primarily made from the stevia plant that does not contain ingredients that are either synthetic or harshly chemically processed and, therefore, is a healthy choice and is superior to competing sugar-alternative sweeteners that do not claim to be natural.

7.      However, Defendant's labeling, advertising, and marketing campaign is false and misleading because: (1) Cargill touts the stevia plant as the reason Truvía is natural, when in fact the stevia-derived ingredient, Reb A, is not the natural crude preparation of stevia, but rather is a highly chemically processed and purified form of stevia leaf extract; (2) the stevia-derived Reb A comprises *only 1%* of Truvía; (3) the main ingredient, erythritol, which Cargill also purports to be a natural ingredient derived through natural processes, is not made like it is in nature, but rather is synthetically made; and (4) Cargill describes the process of obtaining stevia leaf extract as "similar to making tea," but does not tell the consumer that Cargill then adds ethanol, methanol, or rubbing alcohol to this so-called "tea" in a patented multi-step process to purify it.  In short, Truvía is not made primarily from the stevia plant, it is predominantly made of erythritol, and contains only a minute quantity of stevia-derived Reb A (not natural crude stevia); the erythritol used is not natural, it is synthetic; and, the stevia-derived Reb A is harshly purified through chemical processes.  As a result, no reasonable consumer would consider Truvía to be a natural product.

8.      When purchasing Truvía, Plaintiff relied on Defendant's misrepresentations that Truvía is a natural sweetener primarily made from the stevia plant.  Plaintiff would not have purchased this product if she had known that Defendant's representations were false and misleading.  Plaintiff and the Classes paid a premium for Truvía over comparable sugar-alternative sweeteners that did not purport to be natural.  Truvía is consistently more expensive per

**Class Action Complaint**
**Case No. _____**

packet than sugar-alternative competitors, like Sweet 'N Low and Splenda, costing **approximately 300% more per packet than Sweet 'N Low and 67% more per packet than Splenda**.  Plaintiff would not have purchased Truvía had she known the truth.  Plaintiff suffered an injury by purchasing the Product at inflated prices.  Plaintiff did not receive a natural sweetener primarily made from the stevia plant; rather, she received a product that is made predominantly of a synthetic ingredient with only a miniscule amount of Reb A, which itself is harshly chemically purified, in contradiction to Defendant's representations.

9.     Defendant's conduct of falsely marketing, advertising, labeling, and selling Truvía as a natural sweetener primarily made from the stevia plant constitutes unfair, unlawful, and fraudulent conduct; is likely to deceive members of the public; and is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, because, among other things, it misrepresents the characteristics of goods and services.  As such, Plaintiff seeks relief in this action individually and as a class action on behalf of all purchasers in the United States of Defendant's Truvía (the "Class").  Plaintiff also seeks relief in this action individually and as a class action on behalf of a subclass of all purchasers in California of Defendant's Truvía (the "California Class").

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over the claims asserted herein individually and on behalf of the class pursuant to 28 U.S.C. §1332, as amended in February 2005 by the Class Action Fairness Act.  Subject matter jurisdiction is proper because:  (1) the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; and (2) a substantial number of the members of the proposed classes are citizens of a state different from that of Defendant.  Personal jurisdiction is proper as Defendant has purposefully availed itself of the privilege of conducting business activities within this District.

11.     Defendant, a citizen of Minnesota and Delaware, has distributed,

**Class Action Complaint**
**Case No. _____**

marketed, advertised, labeled, and sold Truvía, which is the subject of the present complaint, in this District.    Thus, under 28 U.S.C. §§1391(c)(2) and (d), Defendant is deemed to reside in this District.  As such, venue is proper in this judicial district under 28 U.S.C. §1391(b)(1) because Defendant is deemed to reside in this District and under 28 U.S.C. §1391(b)(2), because Defendant conducts business in this District and a substantial part of the acts or omissions giving rise to the claims set forth herein occurred in this District.

## PARTIES

12.    Plaintiff Erin Calderon is a citizen of California and an individual consumer.    During the Class Period, Plaintiff Calderon purchased Truvía on multiple occasions.  At least two purchases were in 2012 at the Ralphs grocery store located in Westlake Village, California.  Plaintiff Calderon last purchased Truvía in August of  2013 at a Sprouts grocery store in Westlake Village, California.

13.    Prior to purchasing the Product, Plaintiff  Calderon read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Truvía packaging.  For each purchase, she understood that she was paying for a natural sweetener primarily made from the stevia plant and was deceived when she received a product that is made predominantly of synthetic erythritol and with only a miniscule amount of the stevia-derived Reb A, which is purified through a harsh chemical process.  During the Class Period, Plaintiff  Calderon also viewed and relied on Truvía television commericals, which represented the Product as a natural sweetener primarily made from the stevia plant.    But for Defendant's misrepresentations, Plaintiff  Calderon would not have purchased Truvía, and/or would not have paid a premium for Truvía over the price of other sugar-alternative sweeteners that are not promoted as natural.  Plaintiff  Calderon thus was damaged by Defendant's practice.

**Class Action Complaint**
**Case No. _____**

14.     Defendant Cargill is a privately held Delaware corporation, headquartered at 15407 McGinty Rd. West, Wayzata, Minnesota.  Defendant distributes, markets, advertises, and sells Truvía in California and throughout the rest of the United States.

15.     The use of the term "defendants" or "Defendants" in any of the allegations in this Complaint, unless specifically alleged otherwise, is intended to include and charge, both jointly and severally, not only the defendants identified in this Complaint, but also all defendants designated as DOES 1 through 10, inclusive, as though the term "defendants" was followed in each and every instance throughout this Complaint with the phrase "and each of them jointly and severally, including all named defendants and defendants included herein and sued under the fictitious names of DOES 1 through 10, inclusive."

16.     Plaintiff is informed and believes, and thereon alleges, that Defendants, at all times herein mentioned, were the partners, joint venturers, subsidiaries, successors in interest, managing agent, merged entities, agents, alter egos, part of a jointly owned, managed, and/or operated business enterprise, and/or employees of each other Defendant and in doing the acts, omissions, and things alleged herein were acting as such and within the scope of their authority as such agents and employees and with the permission and consent of all other Defendants.   Plaintiff is informed and believes, and thereon alleges, that Defendants have, and at all times herein mentioned had, a joint economic and business interest, goal and purpose in the products that are the subject of this lawsuit.

## ALLEGATIONS OF FACT

### A.     Defendants' False and Misleading Statements

17.     Truvía® Natural Sweetener is manufactured, distributed, marketed, advertised, and sold by Cargill to consumers as a tabletop packet sweetener for food and beverages.

**Class Action Complaint
Case No. _____**

18.     Throughout the Class Period, Cargill engaged in, and Plaintiff and members of the Classes were exposed to, a long-term advertising campaign in which Cargill utilized various forms of media, including, but not limited to, print advertising on the Truvía label and television commercials.   Since Cargill announced the launch of Truvía® Natural Sweetener in 2008, Cargill consistently has made certain representations in its labeling, advertising, and marketing that are false and misleading.   To accomplish this, Cargill uses an integrated, nationwide messaging campaign to consistently convey the deceptive and misleading message that Truvía is a natural sweetener primarily made from the stevia plant.  This message, ***at a minimum***, is conveyed at the point of purchase on the Truvía packaging and labeling.  Thus, all consumers are exposed to the same message whether viewed in television commercials or on the label.

19.     During the Class Period, Plaintiff first was introduced to Truvía through television commercials that featured an image of the stevia plant.

20.     Specifically, Cargill states on Truvía® Natural Sweetener packaging and labeling:

Truvía® Nature's Calorie-Free Sweetener

Truvía® natural sweetener[4]

Truvía® sweetener comes from nature:

> Stevia leaf extract is born from the sweet leaf of the stevia plant, native to South America.  Dried stevia leaves are steeped in water, similar to making tea.  This unlocks the best tasing part of the leaf which is then purified to provide a calorie-free sweet taste.

> Erythritol is a natural sweetener, produced by a natural process, and is also found in fruits like grapes and pears.

/ / /

**Class Action Complaint**
**Case No. _____**

1
2
3
4
5
6
7
8
9
10
11



12
13
14
15
16
17
18
19
20



21
22
23        21.     These statements mislead the consumer into believing that the
24   Product is a natural sweetener primarily made from the stevia plant, when, in fact,
25   the Product is composed of predominantly synthetic erythritol and only a minute
26
27
28   [4] This phrase is included on the packaging as follows:  One packet of Truvía®
     natural sweetener provides the same sweetness as two teaspoons of sugar.

-9-

**Class Action Complaint**
**Case No.** _____

quantity of stevia-derived Reb A, which is purified through a harsh chemical process and is not the same as natural crude stevia.

22.     Plaintiff and the Classes reasonably understood the Product's packaging to mean that the Product is a natural sweetener primarily made from the stevia plant and relied on such representations in making their purchases of the Product.

**B.     Truvía Is Not Primarily Made from the Stevia Plant**

23.     Although Cargill leads consumers to believe that Truvía is primarily made from the stevia plant, Truvía actually is made predominantly with synthetic erythritol.   Plaintiff's calculations indicate that Truvía is ***approximately 99%*** synthetic erythritol.   That Truvía is almost entirely made with a synthetic ingredient is material to consumers, including Plaintiff and members of the Classes, who are seeking to consume natural products.

24.     No reasonable consumer would know or have reason to know that Truvía contains such a ***minute*** amount of the stevia-derived ingredient, Reb A. The quantity of Reb A in Truvía is within the exclusive knowledge of Cargill and is not known to ordinary consumers, including Plaintiff and members of the Classes.   Cargill actively conceals this material fact from consumers, including Plaintiff and members of the Classes.   Cargill's representations that Truvía is made from the stevia plant is, at best, an incomplete partial disclosure.

**C.     Truvía Is Not a *Natural* Sweetener**

**1.     Reb A Is Not the Same as Natural Crude Stevia**

25.     Not only is there but a miniscule amount of stevia in Truvía, but the highly processed, high purity stevia extract Reb A in Truvía is not what most consumers, including Plaintiff and members of the Classes, consider to be natural stevia.

26.     Stevia typically refers to the crude stevia preparation (powder or liquid), which is obtained through the ***natural process*** of drying and crushing

**Class Action Complaint**
**Case No. _____**

stevia leaves and then extracting them with hot water.  This natural crude stevia extract can be purchased as a supplement in health food stores.  Reb A is a highly purified form of stevia extract, which (as discussed below) is obtained through a harsh and unnatural chemical purification process.   So, while the highly processed, high purity Reb A in Truvía is derived from the stevia plant, it is not the same as the natural stevia that is sold in the U.S. as a dietary supplement.  This distinction is material to consumers, including Plaintiff and members of the Classes, who are seeking to consume natural products.

27.    In light of the above, no reasonable consumer would know, or have reason to know, that the stevia extract in Truvía is highly processed high purity Reb A.  This information is within the exclusive knowledge of Cargill and is not known to ordinary consumers, including Plaintiff and members of the Classes. Cargill actively conceals this material fact from consumers, including Plaintiff and members of the Classes.  Cargill's representation that Truvía is made from the stevia plant is misleading.

## 2.    The Unnatural Processing and Synthetic Manufacturing of the Ingredients in Truvía

### a.    *Cargill Creates High Purity Reb A Through a Harsh Chemical Process that Includes Washing Crude Stevia Extract with Ethanol, Methanol, or Rubbing Alcohol*

28.    Cargill creates high purity Reb A by first extracting the crude stevia from the stevia leaf.  I. Prakas, et. al., *Development of rebiana, a natural, non-caloric sweetener*, Food Chem. Toxicol., 2008 Jul;46 Suppl 7:S75, S76-77 (2008). Epub 2008 May 16.  The stevia leaves are dried, crushed, and extracted with water, followed by precipitation and filtration of the stevia extract.  The steviol glycosides (which are the sweet components of the stevia leaf extract) are dissolved in the primary extract while residual plant components are suspended in the primary extract.  Unwanted plant components are removed by "flocculation."

-11-

Flocculation is the process of "flaking" the suspended solids out of the primary extract while leaving behind what is dissolved in solution. This process results in crude stevia extract.

29. The crude stevia extract is then processed to concentrate the steviol gylcosides. In this process, an adsorption resin is used to trap the steviol glycosides of the leaf extract. The resin is washed with methanol or ethanol to release the glycosides. The extract is then concentrated by evaporation or with an adsorption resin, followed by drying to yield a steviol glycoside primary extract. The dried extract may be stored and transported in this form before final purification.

30. The stevia concentrate is then purified selectively for Reb A by stripping away all the steviol glycosides except the Reb A through a multi-step patented process. U.S. Patent No. 0292582 (filed Feb. 12, 2007). In the purification process, the primary extract is redissolved in a water-alcohol solvent mixture and further processed by filtration, crystallization, and centrifugation steps. The resulting preparation of crystals is rinsed with ethanol and vacuum-dried to yield the final purified Reb A product. This purification process results in a high purity (97%) mixture of Reb A and polymorphs of Reb A.

31. That Reb A is obtained through a harsh chemical process is material to consumers, including Plaintiffs and members of the Classes, who are seeking to consume natural products. Consumers, including Plaintiff and members of the Classes, do not consider a product with an ingredient that is harshly chemically processed to be natural.

32. For instance, the U.S. Department of Agriculture ("USDA") takes into account the level of processing in its policy on natural claims on food labeling. The USDA defines a product as "natural" when "(1) The product does not contain any artificial flavor or flavoring, coloring ingredient, or chemical preservative (as defined in 21 CFR 101.22), or any other artificial or synthetic

ingredient; and (2) the product and its ingredients are not more than ***minimally processed***." *See* U.S. Department of Agriculture, Food Safety and Inspection Serv., "Natural Claims" in FOOD STANDARDS AND LABELING POLICY BOOK (revised August 2005). According to the USDA, minimal processing may include: (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, *e.g.*, smoking, roasting, freezing, drying, and fermenting. *Id*.

33.    No reasonable consumer would know, or have reason to know, that Reb A is achieved through a harsh chemical process. This information is within the exclusive knowledge of Cargill and is not known to ordinary consumers, including Plaintiff and members of the Classes. Cargill actively conceals this material fact from consumers, including Plaintiff and members of the Classes. Cargill's representation that Truvía is made from the stevia plant and that making stevia is "like making tea" is misleading.

### b. Cargill Synthetically Manufactures the Erythritol It Uses in Truvía

34.    Cargill represents on the packaging to consumers that erythritol "is a natural sweetener, produced by natural processes" and that it is "found in fruits like grapes and pears." What Cargill fails to disclose is that the erythritol Cargill uses in Truvía is synthetic.

35.    Cargill manufactures Truvía's synthetic erythritol in a patented process (U.S. Patent No. 0037266 (filed June 21, 2006)) by first chemically extracting starch from genetically modified corn and then converting the starch to glucose through the biochemical process of enzymatic hydrolysis. The glucose is then fermented utilizing *moniliella pollinis*, a yeast. The fermentation broth is sterilized, filtered, and purified to produce erythritol crystals. This patented process is not the same process that is used in nature to produce the erythritol that is "found in fruits like grapes and pears."

**Class Action Complaint**
**Case No. _____**

36.     That the main ingredient in Truvía is synthetic is material to consumers, including Plaintiff and members of the Classes, who are seeking to consume natural products.  Consumers, including Plaintiff and members of the Classes, do not consider a product with a synthetic ingredient to be natural.

37.     For instance, while the U.S. Food and Drug Administration ("FDA") has not developed a definition for use of the term "natural," the agency does not object to the use of the term if the food does not contain added color, artificial flavors or *synthetic substances*.  *See* Food Labeling:  Nutrient Content Claims, General Principles Petitions, Definition of Terms, 56 Fed. Reg. 60421, 60466 (Nov. 27, 1991).[5]  Similarly, as stated above, the U.S. Department of Agriculture defines a product as "natural" when "(1) The product does not contain any artificial flavor or flavoring, coloring ingredient, or chemical preservative (as defined in 21 CFR 101.22), or any other artificial or *synthetic ingredient*; and (2) the product and its ingredients are not more than minimally processed."  *See* U.S. Department of Agriculture, Food Safety and Inspection Serv., "Natural Claims" in FOOD STANDARDS AND LABELING POLICY BOOK (revised August 2005).

38.     The term "synthetic" is defined as "of, relating to, or produced by chemical or biochemical synthesis; especially: produced artificially."  *See* http://www.merriam-webster.com/dictionary/synthetic (Last visited June 7, 2013).  Erythritol is a synthetic substance because it is made by man (not nature) through a biochemical process that is not the same as it is made in nature.  Thus, erythritol cannot be considered a natural ingredient.  Truvía is *99% erythritol*, and thus, it also cannot be considered a natural product.

39.     No reasonable consumer would know, or have reason to know, that the erythritol in Truvía is synthetic.  This information is within the exclusive

**Class Action Complaint**
**Case No. _____**

knowledge of Cargill and is not known to ordinary consumers, including Plaintiff and members of the Classes.  Cargill actively conceals this material fact from consumers, including Plaintiff and members of the Classes.  Cargill's representation that erythritol "is a natural sweetener, produced by natural processes" and that it is "found in fruits like grapes and pears" is misleading.

### D.   Consumers Desire Natural Foods

40.   Defendants also realize that consumers are increasingly aware of the relationship between health and diet[6] and, thus, understand the importance and value of descriptors and labels that convey to consumers that a product is natural when considering whether to buy foods.

41.   American consumers are health conscious and look for wholesome, natural foods to keep a healthy diet.  Product package labels are vehicles that convey food quality and nutrition information to consumers that they can and do use to make purchasing decisions.

42.   Surveys have shown that "natural" is one of the top descriptors consumers consider.  *See, e.g.*, David L. Ter Molen and David S. Becker, *An "All Natural" Dilemma: As the Market for "All Natural" Foods Continues to Grow, So Do the Risks for the Unwary* (Nov. 27, 2012) at 2, http://www.freeborn.com/assets/white_papers/02.12_white-paper-natural-food-update.pdf  (last visited June 7, 2013).  Consumers desire natural ingredients in food products for a myriad of reasons, including wanting to live a healthier lifestyle, perceived benefits in avoiding disease, and other chronic conditions, as well as to increase weight loss and avoid chemical additives in their food.  *See,*

---

[5] *See also* http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm (last visited June 7, 2013).

[6] *See* Cargill 2012 Annual Report at 10-11, http://www.cargill.com/wcm/groups/public/@ccom/documents/document/na3065 958.pdf, at 10-11 (last visited June 10, 2013).

**Class Action Complaint**
**Case No. _____**

*e.g.,* Food Marketing Institute, *Natural and Organic Foods* (September 2008) at 1, http://www.fmi.org/docs/media-backgrounder/natural_organic_ foods.pdf?sfvrsn=2 (last visited June 10, 2013)).   As a result, consumers are willing to pay a higher price for higher quality foods, such as those that are natural.  *See, e.g.*, Context Marketing, *Beyond Organic: How Evolving Consumer Concerns Influence Food Purchase* (Oct. 2009) at 6, http://www.contextmarketing.com/insights.html (last visited June 10, 2013).

43.   Although this segment of the health food market was once a niche market, natural foods are increasingly becoming part of the mainstream food landscape.   According to Natural Foods Merchandiser, a leading information provider for the natural, organic, and healthy products industry, the natural food industry enjoyed over $81 billion in total revenue in 2010, and grew over 7% in 2009.  *See Natural and Organic Products Industry Sales Hit $81 Billion, Natural Foods Merchandiser* (June 1, 2011), http://www.prnewswire.com/news-releases/natural-and-organic-products-industry-sales-hit-81-billion-122958763.html (last visited June 10, 2013).   The market for all natural and organic foods grew 9% in 2010 to $39 billion, and 2010 sales were 63% higher than sales in 2005.   http://www.marketwire.com/press-release/natural-and-organic-food-and-beverage-market-to-double-by-2015-1525854.htm (last visited June 10, 2013).  Consumer demand for all natural and organic foods is expected to grow 103% between 2010 and 2015 with annual sales exceeding $78 billion in 2015. *Id.*

44.   In order to capture and tap into this growing market and the hunger of consumers for the perceived healthier, chemical-free benefits of natural foods, Cargill labels Truvía as a natural sweetener primarily made from the stevia plant.

45.   A reasonable consumer understands a natural product to be one that does not contain man-made, synthetic ingredients, is not subject to harsh chemical processes, and is only minimally processed.

**Class Action Complaint**
**Case No. _____**

46.     Consumers lack the meaningful ability to test or independently ascertain the truthfulness of food labeling claims such as "natural," especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredient label; its discovery requires investigation beyond the grocery store and knowledge of food chemistry beyond that of the average consumer.  Thus, reasonable consumers must, and do, rely on food companies such as Cargill to honestly report the nature of a food's ingredients, and food companies such as Cargill intend and know that consumers rely upon food labeling statements in making their purchasing decisions.  Such reliance by consumers is also eminently reasonable, since food companies are prohibited from making false or misleading statements on their products under federal law.

47.     Defendants unscrupulously capitalize on consumers' heightened demand for natural products by deceptively labeling, advertising, and marketing Truvía.

### DAMAGES TO PLAINTIFF AND THE CLASSES

48.     Plaintiff purchased the Product based on Defendants' labeling, advertising, and marketing that the Product is a natural sweetener primarily made from the stevia plant.

49.     Defendants manufactured, distributed, and sold products that are misbranded.  Misbranded products cannot be legally manufactured, distributed, sold, or held, and have no economic value and are legally worthless as a matter of law.

50.     Moreover, Plaintiff and the members of the Classes would not have purchased and/or paid a premium to purchase the Product over comparable products that do not purport to be natural.

51.     As set forth in the chart below, the Product costs more than comparable products that do not purport to be natural.

/ / /

**Class Action Complaint**
**Case No. _____**

| Product | Price | Price per packet | Premium paid per packet versus … |
|---|---|---|---|
| Truvía – 40 count box | $3.99 | $0.0998 | |
| Splenda – 50 count box | $2.99 | $0.0598 | $0.0400 |
| Sweet 'N Low – 100 count box | $2.49 | $0.0249 | $0.0749 |

## TOLLING OF THE STATUTE OF LIMITATIONS, FRAUDULENT CONCEALMENT, EQUITABLE TOLLING, AND CONTINUING VIOLATIONS

52.     Plaintiff did not discover, and could not have discovered, through the exercise of reasonable diligence the existence of the claims sued upon herein until immediately prior to commencing this civil action.

53.     Any applicable statutes of limitation have been tolled by Defendants' affirmative acts of fraudulent concealment and continuing misrepresentations, as the facts alleged above reveal.

54.     Because of the self-concealing nature of Defendants' actions and their affirmative acts of concealment, Plaintiff and the Classes assert the tolling of any applicable statutes of limitations affecting the claims raised herein.

55.     Defendants continue to engage in the deceptive practice, and consequently, unwary consumers are injured on a daily basis by Defendants' unlawful conduct.  Therefore, Plaintiff and the Classes submit that each instance that Defendants engaged in the conduct complained of herein and each instance that a member of any Class purchased Truvía constitutes part of a continuing violation and operates to toll the statutes of limitation in this action.

56.     Defendants are estopped from relying on any statute of limitations defense because of their unfair or deceptive conduct.

**Class Action Complaint**
**Case No. _____**

57.   Defendants' conduct was and is, by its nature, self-concealing.  Still, Defendants, through a series of affirmative acts or omissions, suppressed the dissemination of truthful information regarding their illegal conduct, and actively has foreclosed Plaintiff and the Classes from learning of their illegal, unfair, and/or deceptive acts.  These affirmative acts included concealing the amount of Reb A in Truvía, that Reb A is not the same as natural crude stevia extract, and that the erythritol Cargill uses in Truvía is synthetic.

58.   By reason of the foregoing, the claims of Plaintiff and the Classes are timely under any applicable statute of limitations, pursuant to the discovery rule, the equitable tolling doctrine, and fraudulent concealment.

## CLASS ACTION ALLEGATIONS

59.   Plaintiff brings this action individually and on behalf of all other persons similarly situated.   The Classes which Plaintiff seeks to represent comprise:

a.   All persons in California who purchased Truvia from introduction in 2008 until the date notice is disseminated for personal or household use, and not for resale or distribution purposes.  Specifically excluded from this Class are Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant. Also excluded are those who assert claims for personal injury as well as any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

b.   All persons in the United States outside of California who purchased Truvía from its introduction in 2008 until the date notice is disseminated for personal or household use, and not for resale or

-19-

distribution purposes.   Specifically excluded from this Class are Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant.  Also excluded are those who assert claims for personal injury as well as any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

c. All persons who reside in states in the United States outside of California with similar consumer protection laws, breach of express warranty laws and breach of implied warranty law, who purchased Truvía from its introduction in 2008 until the date notice is disseminated for personal or household use, and not for resale or distribution purposes (Consumer Protection Class).   Specifically excluded from this Class are Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant.  Also excluded are those who assert claims for personal injury as well as any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

60.   The Classes are sufficiently numerous, as each includes thousands of persons who have purchased the Product.  Thus, joinder of such persons in a single action or bringing all members of the Classes before the Court is impracticable for purposes of Rule 23(a)(1).  The question is one of a general or common interest of many persons and it is impractical to bring them all before the Court.  The disposition of the claims of the members of the Classes in this class

**Class Action Complaint**
**Case No. _____**

action will substantially benefit both the parties and the Court.

61.    There are questions of law and fact common to each Class for purposes of Rule 23(a)(2), including whether Defendants' labels and packaging include uniform misrepresentations that misled Plaintiff and the other members of the Classes to believe the Product is natural and made primarily from the stevia plant.  The members of each Class were and are similarly affected by having purchased Truvía for its intended and foreseeable purpose as promoted, marketed, advertised, packaged, and labeled by Defendants as set forth in detail herein, and the relief sought herein is for the benefit of Plaintiff and other members of the Classes.  Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

62.    Plaintiff asserts claims that are typical of the claims of each respective Class for purposes of Rule 23(a)(3).  Plaintiff and all members of each respective Class have been subjected to the same wrongful conduct because they have purchased that Product, which is not natural as represented.  Plaintiff paid a premium for the Product, on the belief it was natural, over similar alternatives that did not make such representations.  Plaintiff and the members of each Class have thus all overpaid for the Product.

63.    Plaintiff will fairly and adequately represent and protect the interests of the other members of each respective Class for purposes of Rule 23(a)(4).  Plaintiff has no interests antagonistic to those of other members of each respective Class.  Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent her.  Plaintiff anticipates no difficulty in the management of this litigation as a class action.

64.    Class certification is appropriate under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to each Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting each Class as a whole.    Defendants utilize an integrated, nationwide messaging

**Class Action Complaint**
**Case No. _____**

campaign that includes uniform misrepresentations that misled Plaintiff and the other members of each Class.

65.     Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any questions that may affect only individual members of each Class.  Among these common questions of law and fact are:

a.     whether Defendants misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling, and sale of Truvía;

b.     whether Defendants' labeling of Truvía is likely to deceive the members of each Class;

c.     whether Defendants' conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

d.     whether Defendants represented that Truvía has characteristics, benefits, uses, or qualities that it does not have;

e.     whether Defendants' acts and practices in connection with the promotion, marketing, advertising, packaging, labeling, distribution, and sale of Truvía violated the laws alleged herein;

f.     whether Plaintiff and members of the Classes are entitled to injunctive and other equitable relief; and

g.     whether Defendants were unjustly enriched by their conduct.

66.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the members of each respective Class. Similar or identical statutory and common law violations and deceptive business practices are involved. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

67.     The injuries sustained by Plaintiff and the members of each Class flow, in each instance, from a common nucleus of operative facts – Defendants'

**Class Action Complaint**
**Case No. _____**

misconduct.

68.    Plaintiff and the members of each Class have been damaged by Defendants' misconduct.  The members of each Class have paid for a product that would not have been purchased in the absence of Defendants' deceptive scheme, or, alternatively, would have been purchased at a lesser price.

69.    Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy.  Members of each Class have suffered and will suffer irreparable harm and damages as a result of Defendants' wrongful conduct.  Because of the nature of the individual claims of the members of each Class, few, if any, could or would otherwise afford to seek legal redress against Defendants for the wrongs complained of herein, and a representative class action is therefore the appropriate, superior method of proceeding and essential to the interests of justice insofar as the resolution of claims of the members of each Class is concerned.  Absent a representative class action, members of each Class would continue to suffer losses for which they would have no remedy, and Defendants would unjustly retain the proceeds of its ill-gotten gains.  Even if separate actions could be brought by individual members of each Class, the resulting multiplicity of lawsuits would cause undue hardship, burden, and expense for the Court and the litigants, as well as create a risk of inconsistent rulings, which might be dispositive of the interests of the other members of each Class who are not parties to the adjudications and/or may substantially impede their ability to protect their interests.

/ / /

/ / /

/ / /

/ / /

/ / /

**Class Action Complaint**
**Case No. _____**

**FIRST CAUSES OF ACTION**

**FALSE AND MISLEADING ADVERTISING IN VIOLATION OF**

**BUSINESS & PROFESSIONS CODE § 17200,** *et seq.*

**(By Plaintiff and California Class against all Defendants and Does 1-10)**

70.     Plaintiff repeats and realleges the allegations set forth above, and incorporates the same as if set forth herein at length.

71.     This cause of action is brought pursuant to *Business and Professions Code* § 17200, *et seq.*

72.     In the advertising of Truvía, Defendant Cargill makes false and misleading statements regarding the benefits and the efficacy of the Truvía, particularly as it applies to weight loss and appetite suppression, all as set forth above.

73.     Defendant Cargill does not have the requisite competent and reliable scientific evidence to support the claims about the Truvía made in Defendants' advertising.

74.     Defendant Cargill is aware that the claims that it makes about the Truvía are false, misleading and unsubstantiated.

75.     As alleged in the preceding paragraphs, the misrepresentations by Defendant Cargill of the material facts detailed above constitute an unfair and fraudulent business practice within the meaning of California *Business & Professions Code* § 17200.

76.     In addition, Defendant Cargill's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitute unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of *Business & Professions Code* §§ 17531 and 17200, which advertisements have deceived and are likely to deceive the consuming public, in violation of *Business & Professions Code* § 17500.

**Class Action Complaint**
**Case No. _____**

77.    There were reasonably available alternatives to further Defendant Cargill's legitimate business interests, other than the conduct described herein.

78.    All of the conduct alleged herein occurs and continues to occur in Defendant Cargill's business.   Defendant Cargill's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

79.    Pursuant to *Business & Professions Code* §§ 17203 and 17535, Plaintiff and the members of the Classes seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of advertising the sale and use of the Truvía.  Likewise, Plaintiff and the members of the Classes seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations.

## SECOND CAUSE OF ACTION

### FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, *et seq*.

### (By Plaintiff and California Class against all Defendants and Does 1-10)

80.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

81.    This cause of action is brought pursuant to *Business and Professions Code* § 17500, *et seq.*

82.    In its advertising of Truvía, Defendants make false and misleading statements regarding the benefits and the efficacy of Truvía, particularly as it applies to natural make up of Truvía, all as set forth above.

83.    Defendants do not have any competent and reliable scientific evidence to support the claims about Truvía made in Defendants' advertising.

**Class Action Complaint**
**Case No. _____**

84.   Defendants are aware that the claims that it makes about Truvía are false, misleading and unsubstantiated.

85.   As alleged in the preceding paragraphs, the misrepresentations by Defendants of the material facts detailed above constitute an unfair and fraudulent business practice within the meaning of California *Business & Professions Code* § 17500.

86.   In addition, Defendants' use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of *Business & Professions Code* §§ 17531 and 17200, which advertisements have deceived and are likely to deceive the consuming public, in violation of *Business & Professions Code* § 17500.

87.   Pursuant to *Business & Professions Code* §§ 17203 and 17535, Plaintiff and the members of the Classes seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of advertising the sale and use of Truvía.  Likewise, Plaintiff and the members of the Classes seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations.

### THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 1750, *et seq*.

### (By Plaintiff and California Class against all Defendants and Does 1-10)

88.   Plaintiff repeats and realleges all the allegations of the previous paragraphs, and incorporates the same as if set forth herein at length.

89.   This cause of action is brought pursuant to *Civil Code* § 1750, *et*

**Class Action Complaint**
**Case No. _____**

*seq*., the Consumers Legal Remedies Act.

90.     The Consumer Class consists of thousands of persons, the joinder of whom is impracticable.

91.     There are questions of law and fact common to the classes, which questions are substantially similar and predominate over questions affecting the individual members, including but not limited to:

(a)  Whether Defendants represented that Truvía has characteristics, benefits, uses or quantities which it does not have;

(b)  Whether the existence, extent and significance of the major misrepresentations regarding the purported benefits, characteristics and efficacy of Truvía violate the Act; and

(c)  Whether Defendants knew of the existence of these misrepresentations.

92.     The policies, acts, and practices heretofore described were intended to result in the sale of Truvía to the consuming public and violated and continue to violate § 1770(a)(5) of the Act by representing that Truvía has characteristics, benefits, uses or quantities which it does not have.

93.     Defendants fraudulently deceived Plaintiff and the Classes by representing that Truvía has certain characteristics, benefits, uses and qualities which it does not have.  In doing so, Defendants intentionally misrepresented and concealed material facts from Plaintiff and the Classes, specifically and not limited to that Truvía is natural.  Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Classes and depriving them of their legal rights and money.

94.     Defendants knew that Truvía was and is not natural as represented in Defendants' advertisements and on Defendants' packaging.

95.     Defendants' actions as described hereinabove were done with conscious disregard of Plaintiff's rights and Defendants were wanton and malicious in their concealment of the same.

**Class Action Complaint**
**Case No. _____**

96.     Pursuant to § 1780(a) of the Act, Plaintiff seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendants, including, but not limited to, an order enjoining Defendants from distributing such false advertising and misrepresentations.   Plaintiff shall be irreparably harmed if such an order is not granted.

97.     Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore any person in interest any money which may have been acquired by means of such unfair business practices, and for such relief as provided in *Civil Code* § 1780 and the Prayer For Relief.

98.     Pursuant  to Civil Code §1782, Plaintiff gave Defendants notice by letter dated September 23, 2013 by certified mail, of the particular violations of Civil Code § 1770.  The Notice requested that Defendants rectify the problems associated with the actions alleged in this Complaint, and give notice to all affected consumers of its intent to so act. Defendants have not yet responded to this Notice.

## FOURTH CAUSE OF ACTION

## UNJUST ENRICHMENT

### (By Plaintiff, California Class and National Class

### Against all Defendants and Does 1-10)

99.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

100.    Plaintiff brings this claim individually, as well as on behalf of members of the nationwide Class and California Class pursuant California law. Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for

-28-

the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state.  Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, California law applies to the claims of the Class.

101.   In the alternative, Plaintiff brings this claim individually as well as on behalf of the California Class.

102.   At all times relevant hereto, Defendants deceptively labeled, marketed, advertised, and sold Truvía to Plaintiff and the Class.

103.   Plaintiff and members of the Class conferred upon Defendants non-gratuitous payments for Truvía that they would not have due to Defendants' deceptive labeling, advertising, and marketing.  Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, as a result of Defendants' deception, Plaintiff and members of the Class were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendants and reasonable consumers would have expected.

104.   Defendants have been unjustly enriched in retaining the revenues derived from purchases of Truvía by Plaintiff and members of the Class, which retention under these circumstances is unjust and inequitable because Defendants misrepresented that Truvía is a natural sweetener primarily made from the stevia plant, when in fact it is not, which caused injuries to Plaintiff and members of the Class because they paid a price premium due to the mislabeling of Truvía.

105.   Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiff and members of the Class under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.  Thus, Defendants must pay restitution to Plaintiff and members of the Class for their unjust enrichment, as ordered by the Court.

**Class Action Complaint**
**Case No. _____**

## **FIFTH CAUSE OF ACTION**

### **BREACH OF EXPRESS WARRANTY**

**(By Plaintiff, on behalf of herself, the California Class and**

**Consumer Protection Class Against all Defendants and Does 1-10)**

106.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

107.   Plaintiff brings this Count individually under the laws of the state where she purchased Truvía and on behalf of the California Class and Consumer Protection Class (in States having similar laws regarding express warranties).

108.   Defendants' representations, as described herein, are affirmations by Defendants that Truvía is a natural sweetener primarily made of stevia. Defendants' representations regarding Truvía are made to Plaintiff and the other members of the Classes at the point of purchase and are part of the description of the goods.  Those promises constituted express warranties and became part of the basis of the bargain, between Defendants on the one hand, and Plaintiff and the Classes on the other.

109.   In addition, or in the alternative, Defendants made each of their above-described representations to induce Plaintiff and the Classes to rely on such representations, and they each did so rely on Defendants' representations as a material factor in their decisions to purchase Truvía.  Plaintiff and other members of the Classes would not have purchased Truvía but for these representations and warranties.

110.   Truvía did not, in fact, meet the representations Defendants made about Truvía, as described herein.

111.   At all times relevant to this action, Defendants falsely represented that Truvía was a natural sweetener primarily made from the stevia plant, when in fact it is not natural and is not primarily made from the stevia plant.

**Class Action Complaint**

**Case No. _____**

112.   At all times relevant to this action, Defendants made false representations in breach of the express warranties and in violation of state express warranty laws, including:

a.   Alaska St. §45.02.313;

b.   Ariz. Rev. Stat. Ann. §47-2313;

c.   Ark. Code Ann. §4-2-313;

d.   Cal. Com. Code §2313;

e.   Colo. Rev. Stat. §4-2-313;

f.   Conn. Gen. Stat. Ann. §42a-2-313;

g.   D.C. Code §28:2-313;

h.   Fla. Stat. §672.313;

i.   Haw. Rev. Stat. §490:2-313;

j.   810 Ill. Comp. Stat. 5/2-313;

k.   Ind. Code §26-1-2-313;

l.   Kan. Stat. Ann. §84-2-313;

m.   La. Civ. Code. Ann. art. 2520;

n.   Maine Rev. Stat. Ann. 11 §2-313;

o.   Mass. Gen. Laws Ann. 106 §2-313;

p.   Minn. Stat. Ann. §336.2-313;

q.   Miss. Code Ann. §75-2-313;

r.   Mo. Rev. Stat. §400.2-313;

s.   Mont. Code Ann. §30-2-313;

t.   Neb. Rev. Stat. §2-313;

u.   Nev. Rev. Stat. §104.2313;

v.   N.H. Rev. Stat. Ann. §382-A:2-313;

w.   N.J. Stat. Ann. §12A:2-313;

x.   N.M. Stat. Ann. §55-2-313;

y.   N.Y. U.C.C. Law §2-313;

**Class Action Complaint**
**Case No. _____**

z.      N.C. Gen. Stat. Ann. §25-2-313;

aa.     Okla. Stat. Ann. tit. 12A, §2-313;

bb.     Or. Rev. Stat. §72.3130;

cc.     Pa. Stat. Ann. tit. 13, §2313;

dd.     R.I. Gen. Laws §6A-2-313;

ee.     S.C. Code Ann. §36-2-313;

ff.     S.D. Codified Laws. §57A-2-313;

gg.     Tenn. Code Ann. §47-2-313;

hh.     Tex. Bus. & Com. Code Ann. §2.313;

ii.     Utah Code Ann. §70A-2-313;

jj.     Vt. Stat. Ann. tit. 9A§2-313;

kk.     Wash. Rev. Code §62A.2-313;

ll.     W. Va. Code §46-2-313;

mm.     Wyo. Stat. Ann. §34.1-2-313;

113.    The above statutes do not require privity of contract in order to recover for breach of express warranty.

114.    As a proximate result of this breach of warranty by Defendants, Plaintiff and other members of the Classes have been damaged in an amount to be determined at trial because:  (a) they paid a price premium due to the deceptive labeling of Truvía; and (b) Truvía did not have the composition, attributes, characteristics, nutritional value, health qualities, or value promised.

115.    Wherefore, Plaintiff and the Classes demand judgment against Defendants for compensatory damages, plus interest, costs, and such additional relief as the Court may deem appropriate or to which Plaintiff and the Classes may be entitled.

/ / /

/ / /

/ / /

**Class Action Complaint**
**Case No. _____**

## SIXTH CAUSE OF ACTION

### BREACH IMPLIED WARRANTY

**(By Plaintiff, on Behalf of Herself, the California Class, the California Class and Consumer Protection Class Against Defendants and Does 1-10)**

116. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

117. Plaintiff brings this Count individually under the laws of the state where she purchased Truvía and on behalf of the California Class and Consumer Protection Class (in States having similar laws regarding implied warranties).

118. The Uniform Commercial Code §2-314 provides that unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. This implied warranty of merchantability acts as a guarantee by the seller that his goods are fit for the ordinary purposes for which they are to be used.

119. Defendants developed, manufactured, advertised, marketed, sold, and/or distributed the Product and represented that the Product was fit for a particular use, specifically that the Product could be used as a natural sweetener primarily made from the stevia plant. Contrary to such representations, Defendants failed to disclose that the Product is not natural and is not primarily made from the stevia plant, as promised.

120. At all times, the following states listed below, including the District of Columbia, have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability:

a.     Ala. Code §7-2-314;

b.     Alaska Stat. §45.02.314;

c.     Ariz. Rev. Stat. Ann. §47-2314;

d.     Ark. Code Ann. §4-2-314;

e.     Cal. Com. Code §2314;

-33-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

f.      Colo. Rev. Stat. §4-2-314;

g.      Conn. Gen. Stat. Ann. §42a-2-314;

h.      Del. Code Ann. tit. 6 §2-314;

i.      D.C. Code §28:2-314;

j.      Fla. Stat. §672.314;

k.      Ga. Code Ann. §11-2-314;

l.      Haw. Rev. Stat. §490:2-314;

m.      Idaho Code §28-2-314;

n.      810 Ill. Comp. Stat. Ann. 5/2-314;

o.      Ind. Code Ann. §26-1-2-314;

p.      Iowa Code Ann. §554.2314;

q.      Kan. Stat. Ann. §84-2-314;

r.      Ky. Rev. Stat. Ann. §355.2-314;

s.      La. Civ. Code Ann. art. §2520;

t.      Me. Rev. Stat. Ann. 11 §2-314;

u.      Md. Code Ann. Com. Law §2-314;

v.      Mass. Gen. Laws Ch. 106 §2-314;

w.      Mich. Comp. Laws Ann. §440.2314;

x.      Minn. Stat. Ann. §336.2-314;

y.      Miss. Code Ann. §75-2-314;

z.      Mo. Rev. Stat. §400.2-314;

aa.     Mont. Code Ann. §30-2-314;

bb.     Nev. Rev. Stat. §104.2314;

cc.     N.H. Rev. Stat. Ann. §382-A:2-314;

dd.     N.J. Stat. Ann. §12A:2-314;

ee.     N.M. Stat. Ann. §55-2-314;

ff.     N.Y. U.C.C. Law §2-314;

gg.     N.C. Gen. Stat. Ann. §25-2-314;

**Class Action Complaint**
**Case No. _____**

1    hh.    N.D. Cent. Code §41-02-314;

2    ii.    Ohio Rev. Code Ann. §1302.27;

3    jj.    Okla. Stat. Ann. tit. 12A §2-314;

4    kk.    Or. Rev. Stat. §72.3140;

5    ll.    Pa. Stat. Ann. tit. 13 §2314;

6    mm.    R.I. Gen. Laws §6A-2-314;

7    nn.    S.C. Code Ann. §36-2-314;

8    oo.    S.D. Codified Laws §57A-2-314;

9    pp.    Tenn. Code Ann. §47-2-314;

10   qq.    Tex. Bus. & Com. Code Ann. §2-314;

11   rr.    Utah Code Ann. §70A-2-314;

12   ss.    Va. Code Ann. §8.2-314;

13   tt.    Vt. Stat. Ann. tit. 9A §2-314;

14   uu.    W. Va. Code §46-2-314;

15   vv.    Wash. Rev. Code §62A 2-314;

16   ww.    Wis. Stat. Ann. §402.314; and

17   xx.    Wyo. Stat. Ann. §34.1-2-314.

18   121.   As developer, manufacturer, producer, advertiser, marketer, seller
19 and/or distributor of sweetening products, Defendants are "merchants" within the
20 meaning of the various states' commercial codes governing the implied warranty
21 of merchantability.

22   122.   Further, Defendants are merchants with respect to the Product.
23 Defendants developed, manufactured, produced, advertised, marketed, sold,
24 and/or distributed the Product and represented to Plaintiff and the Classes that
25 they developed the Product as a natural sweetener primarily made from the stevia
26 plant as described herein.  Further, Defendants, by selling the Product to Plaintiff
27 and the Classes, have held themselves out as retailers of the Product that could be

28

-35-

**Class Action Complaint**
**Case No. _____**

used as a natural sweetener primarily made from the stevia plant and, in fact, have derived a substantial amount of revenues from the sale of the Product.

123.   The Product can be classified as "goods," as defined in the various states' commercial codes governing the implied warranty of merchantability.

124.   As a merchant of the Product, Defendants knew that purchasers relied upon them to develop, manufacture, produce, sell, and distribute a product that could be used as a natural sweetener primarily made from the stevia plant, as promised.

125.   Defendants developed, manufactured, produced, sold, and distributed the Product to consumers such as Plaintiff and the Classes.   It knew that the Product would be used as a natural sweetener primarily made from the stevia plant, as promised.

126.   Defendants specifically represented in their labeling of the Product that it is a natural sweetener primarily made from the stevia plant, as described herein.

127.   At the time that Defendants developed, manufactured, sold, and/or distributed the Product, Defendants knew the purpose for which the Product was intended and impliedly warranted that the Product was of merchantable quality and was fit for its ordinary purpose – a natural sweetener primarily made from the stevia plant.

128.   Defendants breached their implied warranties in connection with the sale of the Product to Plaintiff and members of the Classes.   The Product was not fit for its ordinary purposes and intended use as a natural sweetener primarily made of stevia, because the Product is not natural and is predominantly made of erythritol.

129.   Defendants had actual knowledge that the Product was not natural and was not primarily made from the stevia plant as promised and thus was not fit for its ordinary purpose and Plaintiff therefore was not required to notify

**Class Action Complaint**
**Case No. _____**

Defendants of their breach.   If notice is required, Plaintiff and the Classes adequately have provided Defendants of such notice through the filing of this lawsuit.

130.   As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff and other members of the Classes have been injured.  Plaintiff and the other members of the Classes would not have purchased the Product but for Defendants' representations and warranties.   Defendants misrepresented the character of the Product, which caused injuries to Plaintiff and the other members of the Classes because either they paid a price premium due to the deceptive labeling or they purchased products that were not of a character and fitness as promised and therefore had no value to Plaintiff and the other members of the Classes.

## SEVENTH CAUSE OF ACTION

## VIOLATIONS OF CONSUMER FRAUD LAWS

**(By Plaintiff, on Behalf of Herself, the California Class, and Consumer Protection Class against all Defendants and Does 1-100)**

131.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

132.   Plaintiff brings this Count individually under the laws of the state where she purchased Truvía and on behalf of all other persons who purchased Truvía in States having similar laws regarding consumer fraud and deceptive trade practices.

133.   Plaintiff and each of the other members of the Classes are consumers, purchasers, or other persons entitled to the protection of the consumer protection laws of the State in which they purchased the Product.

134.   The consumer protection laws of the State in which Plaintiff and the other members of the Classes purchased the Product declare that unfair or deceptive acts or practices, in the conduct of trade or commerce, are unlawful.

**Class Action Complaint**
**Case No. _____**

135.   Forty States and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

a.   Alabama Deceptive Trade Practices Act, Ala. Code §8-19-1 *et seq.*;

b.   Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Code §45.50.471 *et seq.*;

c.   Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101 *et seq.*;

d.   California Consumer Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*;

e.   Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101 *et seq.*;

f.   Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a *et seq.*;

g.   Delaware Deceptive Trade Practices Act, Del. Code tit. 6§2511 *et seq.*;

h.   District of Columbia Consumer Protection Procedures Act, D.C. Code §28 3901 *et seq.*;

i.   Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201 *et seq.*;

j.   Georgia Fair Business Practices Act, Ga. Code Ann. §10-1-390 *et seq.*;

k.   California Unfair and Deceptive Practices Act, California Revised Statues §480-1 *et seq.*, and California Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. §481A-1 *et seq.*;

l.   Idaho Consumer Protection Act, Idaho Code Ann. §48-601 *et seq.*;

m.   Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1 *et seq.*;

-38-

**Class Action Complaint**
**Case No.** _____

n.  Kansas Consumer Protection Act, Kan. Stat. Ann §50 626 *et seq.*;

o.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §367.110 *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §365.020 *et seq.*;

p.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §51:1401 *et seq.*;

q.  Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5 §205A *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. tit. 10, §1211 *et seq.*,

r.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

s.  Michigan Consumer Protection Act, Mich. Comp. Laws §445.901 *et seq.*;

t.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann.§325F.68 *et seq.,* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43 *et seq.*;

u.  Mississippi Consumer Protection Act, Miss. Code Ann. §§75-24-1 *et seq.*;

v.  Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010 *et seq.*;

w.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. §30-14-101 *et seq.*;

x.  Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601 *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301 *et seq.*;

y.  Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §598.0903 *et seq.*;

z.  New Hampshire Consumer Protection Act,  N.H. Rev. Stat. §358-A:1 *et seq.*;

aa.  New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8 1 *et seq.*;

-39-

**Class Action Complaint**
**Case No. _____**

bb.    New Mexico Unfair Practices Act, N.M. Stat. Ann. §57 12 1 *et seq.*;

cc.    New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §349 *et seq.*;

dd.    North Dakota Consumer Fraud Act, N.D. Cent. Code §51 15 01 *et seq.*;

ee.    Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §1345.02 and 1345.03; Ohio Admin. Code §109:4-3-02, 109:4-3-03, and 109:4-3-10;

ff.    Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 §751 *et seq.*;

gg.    Oregon Unfair Trade Practices Act, Ore. Rev. Stat §646.608(e) & (g);

hh.    Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws §6-13.1-1 *et seq.*;

ii.    South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10 *et seq.*;

jj.    South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§37 24 1 *et seq.*;

kk.    Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101 *et seq.*;

ll.    Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §2451 *et seq.*;

mm.    Washington Consumer Fraud Act, Wash. Rev. Code §19.86.010 *et seq.*;

nn.    West Virginia Consumer Credit and Protection Act, West Virginia Code §46A-6-101 *et seq.*; and

oo.    Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18 *et seq.*

136.    The Product constitutes a product to which these consumer protection laws apply.

137.    In the conduct of trade or commerce regarding its production, marketing, and sale of the Product, Defendants engaged in one or more unfair or

**Class Action Complaint**
**Case No. _____**

deceptive acts or practices, including, but not limited to, uniformly representing to Plaintiff and each member of the Classes by means of their packaging and labeling of the Product that it is a natural sweetener primarily made from the stevia plant, as described herein.

138.   Defendants' representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

139.   Defendants knew, or should have known, that their representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

140.   Defendants used or employed such deceptive and unlawful acts or practices with the intent that Plaintiff and members of the Classes rely thereon.

141.   Plaintiff and the other members of the Classes did so rely.

142.   Plaintiff and the other members of the Classes purchased the Product produced by Defendants which misrepresented the characteristics and nature of the Product.

143.   Plaintiff and the other members of the Classes would not have purchased the Product but for Defendants' deceptive and unlawful acts.

144.   As a result of Defendants' conduct, Plaintiff and the other members of the Classes sustained damages in amounts to be proven at trial.

145.   Defendants' conduct showed complete indifference to, or conscious disregard for, the rights and safety of others such that an award of punitive and/or statutory damages is appropriate under the consumer protection laws of those states that permit such damages to be sought and recovered.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief against Defendants as follows (cause of action number three is excluded from the below to the extent the remedy includes monetary damages):

A.   that the Court certify the nationwide Class and the California Class under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiff as

**Class Action Complaint**
**Case No. _____**

1  Class Representative and her attorneys as Class Counsel to represent the members
2  of the Classes;

3      B.   that the Court declare that Defendants' conduct violates the statutes
4  referenced herein;

5      C.   that the Court preliminarily and permanently enjoin Defendants from
6  conducting its business through the unlawful, unfair, or fraudulent business acts or
7  practices, untrue, and misleading labeling and marketing and other violations of
8  law described in this Complaint;

9      D.   that the Court order Defendants to conduct a corrective advertising
10 and information campaign advising consumers that the Product does not have the
11 characteristics, uses, benefits, and quality Defendants have claimed;

12     E.   that the Court order Defendants to implement whatever measures are
13 necessary to remedy the unlawful, unfair, or fraudulent business acts or practices,
14 untrue and misleading advertising, and other violations of law described in this
15 Complaint (excluded from this request is cause of action number three to the
16 extent the remedy includes montetary damages);

17     F.   that the Court order Defendants to notify each and every individual
18 and/or business who purchased the Product of the pendency of the claims in this
19 action in order to give such individuals and businesses an opportunity to obtain
20 restitution from Defendants (excluded from this request is cause of action number
21 three);

22     G.   that the Court order Defendants to pay restitution to restore to all
23 affected persons all funds acquired by means of any act or practice declared by
24 this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue
25 or misleading labeling, advertising, and marketing, plus pre- and post-judgment
26 interest thereon(excluded from this request is cause of action number three);

27     H.   that the Court order Defendants to disgorge all monies wrongfully
28 obtained and all revenues and profits derived by Defendants as a result of its acts

**Class Action Complaint**
**Case No. _____**

or practices as alleged in this Complaint (excluded from this request is cause of action number three);

I.    that the Court award damages to Plaintiff and the Classes (excluded from this request is cause of action number three);

J.    the common fund doctrine, and/or any other appropriate legal theory (excluded from this request is cause of action number three); and

K.    that the Court grant such other and further relief as may be just and proper (excluded from this request is cause of action number three to the extent the remedy includes montetary damages).

DATED:   September 23, 2013          **MARLIN & SALTZMAN, LLP**

By: _____
William A. Baird
Attorneys for Plaintiff

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action so triable.

DATED:   September 23, 2013          **MARLIN & SALTZMAN, LLP**

By: _____
William A. Baird
Attorneys for Plaintiff

**Class Action Complaint**
Case No. _____

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ George H. King _____ and the assigned Magistrate Judge is _____ John E. McDermott _____ .

The case number on all documents filed with the Court should read as follows:

### 2:13CV7046 GHK JEMx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

September 23, 2013                     By  J.Prado

Date                                      Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| | | |
|---|---|---|
| [x] Western Division<br>312 N. Spring Street, G-8<br>Los Angeles, CA 90012 | [ ] Southern Division<br>411 West Fourth St., Ste 1053<br>Santa Ana, CA 92701 | [ ] Eastern Division<br>3470 Twelfth Street, Room 134<br>Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

CV-18 (08/13)          NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| ERIN CALDERON, individually and on behalf of all others similarly situated, | ) ) ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) ) |
| CARGILL, INC. _____, and Does 1 through 10, inclusive | ) ) ) |
| _____ | ) ) |
| *Defendant(s)* | ) |

**CV13-7046** bHK (JEMx)

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  William A. Baird, Esq.
MARLIN & SALTZMAN, LLP
9229 Canwood Street, Suite 208
Agoura Hllis, CA   91301

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

SEP 2 3 2013

Date: _____

CLERK OF COURT

_____
*Signature of Clerk or Deputy Clerk*

AO-440

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. _____

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $  0.00   for travel and $   0.00   for services, for a total of $  0.00   .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                                          *Server's signature*

                                        _____
                                                          *Printed name and title*


                                        _____
                                                          *Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

ERIN CALDERON, individually and on behalf of all others similarly situated

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

CARGILL, INCORPORATED, and DOES 1 through 10, inclusive

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)
Stanley D. Saltzman, Marcus J. Bradley, William A. Baird
MARLIN & SALTZMAN, LLP
29229 Canwood Street, Suite 208, Agoura Hills, CA 91301
Ph: (818) 991-8080  Fax: (818) 991-8081

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No     ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
False and Misleading Advertising in Violation of B&P Code Sec. 17200, et seq.; False and Misleading Advertising in Violation of B&P Code Sec. 17500, et seq.; Civil Code Sec. 1750; Unjust enrichment; Breach of Express Warranty; Breach of Implied Warranty; Violation of Consumer Fraud Laws

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number:     CV13-7046

CV-71 (09/13)                    CIVIL COVER SHEET                    Page 1 of 3

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII. VENUE**: Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes ☒ No | ☐ Los Angeles | Western |
| If "no, " go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☐ Yes ☒ No | A PLAINTIFF? | A DEFENDANT? | |
| | Then check the box below for the county in which the majority of DEFENDANTS reside. | Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Western |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _____   DATE: September 23, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
| --- | --- | --- |
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |